RECORD NO. 15-4158

# IN THE
# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

---

## UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

## LYNDON FACISCO MILLER,

*Defendant - Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE
The Honorable Marvin J. Garbis, Presiding

---

**OPENING BRIEF OF APPELLANT
LYNDON FACISCO MILLER**

---

Michael D. Montemarano
MICHAEL D. MONTEMARANO, PA
Suite 146
10630 Little Patuxent Parkway
Columbia, MD 21044
(410) 992-0067
montemarano67@gmail.com

*Counsel for Appellant
Lyndon Facisco Miller*

---

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# **TABLE OF CONTENTS**

Page

Table of Contents                                                    i

Table of Citations                                                   iii

Statement of Subject Matter and Appellate
    Jurisdiction                                  2

Statement of the Issues Presented for Review                         3

Statement of the Case                                                4

Statement of Facts                                                   5

Summary of the Argument                                              6

Argument:

    **I. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE FROM THE WIRETAP OF MULTIPLE PHONES, AND THE GPS MONITORING OF MULTIPLE VEHICLES, WHEN THERE DID NOT EXIST PROBABLE CAUSE TO BELIEVE THESE INSTRUMENTALITIES WERE BEING UTILIZED IN A NARCOTICS DISTRIBUTION ENTERPRISE, AND THE APPLICATIONS FOR SUCH MONITORING WERE FACIALLY INSUFFICIENT.**                                8

    **II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE SEIZED THROUGH THE WARRANTLESS SEARCH BY STATE LAW ENFORCEMENT OF APPELLANT'S CELL PHONES, IN CONTRAVENTION OF *RILEY V. CALIFORNIA*.**                         13

**III.   THE TRIAL COURT FAILED TO ENSURE THAT APPELLANT ACTUALLY COMPREHENDED HIS RIGHT TO COUNSEL IN AN ADEQUATE FASHION SO AS TO ENTER A CONSTITUTIONALLY EFFECTIVE WAIVER OF THIS RIGHT, AND IN SO DOING FAILED TO MEET THE REQUIREMENTS OF *FARETTA*.**     20

Conclusion     33

Certificate of Compliance     34

Certificate of Service     35

## <u>TABLE OF CITATIONS</u>

### Cases

*Adams v. United States ex rel. McCann ,*
    317 U.S. 269 (1942)                                   24

*Andresen v. Maryland,*
    427 U.S. 463 (1976)                                   12

*Brigham City v. Stuart,*
    547 U.S. 398, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)    14

*Faretta v. California,*
    422 U.S. 806 (1975)                   3, 7, 23, 24, 30, 31, 32

*Fields v. Murray,*
    49 F.3d 1024 (4th Cir.1995) (en banc)          27

*Gideon v. Wainwright,*
    373 U.S. 335 (1963)                       6, 21, 23

*Groh v. Ramirez,*
    540 U.S. 551 (2004)                            12

*Johnson v. United States,*
    333 U.S. 10, 68 S. Ct. 367, 92 L. Ed. 436 (1948)    15

*Johnson v. Zerbst,*
    304 U.S. 458 (1938)                           24

*Kentucky v. King,*
    563 U.S. ——, ——, 131 S.Ct. 1849,
    179 L.Ed.2d 865 (2011)                   15, 18

*Marron v. United States*,
    275 U.S. 192 (1927) ........................................... 12

*Martinez v. Court of Appeal of Calif.*,
    528 U.S. 152 (2000) .................................... 27, 30

*McDowell v. United States*,
    814 F.2d 245 (6th Cir.),
    *cert. denied,* 484 U.S. 980 (1987) ......................... 25

*Ornelas, v. United States*,
    517 U.S. 690 (1996) ............................................ 8

*Patterson v. Illinois*,
    487 U.S. 285 (1988) ................................. 24, 30, 31

*Riley v. California*,
    —U.S. —, 134 S. Ct. 2473 (2014) ............. 3, 6, 14, 15, 17

*Stanford v. Texas*,
    379 U.S. 476 (1965) ......................................... 12

*United States v. Bush*,
    404 F.3d 263 (4th Cir. 2005) ....................... 20, 28, 29

*United States v. Frazier-El*,
    204 F.3d 553 (6th Cir.),
    *cert. denied,* 484 U.S. 980 (1987) ............. 27, 28, 29, 30

*United States v. Graves*,
    545 Fed. App'x 230, 234 (4th Cir. 2013) ................... 16

*United States v. Hurwitz*,
    459 F.3d 463 (4th Cir. 2004) ............................... 12

*United States v. Jones*,
    132 S. Ct. 945 (2012) ................................... 11, 16

*United States v. Lopez*,
    219 F.3d 343 (4th Cir. 2000)    13

*United States v. Murphy*,
    552 F.3d 405 (4th Cir. 2009)    16

*United States v. Robinson*,
    414 U.S. 218 (1973)    15

*United States v. Singleton,*
    107 F.3d 1091 (4th Cir. 1997)    20, 27, 29

## Statutes

18 USC § 922(g)    4

18 USC § 924(c)    4

18 USC § 3231    2

21 USC § 841    4

21 USC § 846    4

28 USC § 1291    2

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

────

No. 15-4158

────

**LYNDON MILLER,**

Appellant,

v.

**THE UNITED STATES OF AMERICA**,

Appellee.

────

BRIEF OF APPELLANT

────

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND,
NORTHERN DIVISION
(Marvin Garbis, SUSDJ)

────

Michael D. Montemarano
Michael D. Montemarano, P.A.
10630 Little Patuxent Parkway
Suite 146
Columbia, MD 21044
(410) 992-0067/Fax 992-6915
For Appellant

## STATEMENT OF  SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from final judgment in a criminal case, entered against Appellant on March 4, 2015.  JA 892.  Jurisdiction in the District Court was based upon 18 USC § 3231.

By Notice of Appeal filed on March 11, 2015, JA 898, Appellant requests this Court to review the final decision of the district court as to his conviction, pursuant to the jurisdiction conferred by 28 USC § 1291.

# STATEMENT OF
## THE ISSUES PRESENTED FOR REVIEW

*Issue I*

Whether the trial court erred in failing to suppress the evidence obtained from a electronic monitoring of cell phones for which no probable cause was demonstrated, or GPS monitoring of rental vehicles specified in neither the warrant nor the application?

*Issue II*

Whether the trial court erred in failing to suppress the evidence obtained from a warrantless search of Appellant's cell phones, in contravention of *Riley v. California?*

*Issue III*

Whether the trial court conducted an adequate inquiry regarding Appellant's professed desire to represent himself, so as to fulfill the requirements for such a waiver of counsel in favor of self-representation, as required by *Faretta*?

## STATEMENT OF THE CASE

Appellant was charged in a seven count Indictment ("the Indictment") JA 39, filed in the District of Maryland on June 26, 2013, with narcotics conspiracy, 21 USC § 846, narcotics distribution, 21 USC § 841, use of a firearm in a narcotics trafficking offense, 18 USC § 924( c), and felon in possession of a firearm, 18 USC § 922(g), arising out of events in the period from April to June, 2013.

Motions were heard on July 30, 2014, in the United States District Court for the District of Maryland, Northern Division, at Baltimore, before the Honorable Ellen Lipton Hollander, USDJ, and on October 3 and 30, 2014, before the Honorable Marvin J. Garbis, SUSDJ. Trial was held before a jury for six days from November 12 through 25, 2014. Prior to submission of the case to the jury, count 2 was dismissed by oral motion of the Government. On November 25, 2014,the jury returned a verdict of guilty as to counts 1 through 5 and 7. The jury was hung as to count 6.

Sentencing was held on March 2, 2015. Appellant received a total sentence of 240 months (20 years), formed by sentences of 240 months on counts 1 through 5, and a sentence of 120 months on count 7, all imposed concurrently. Appellant noted a timely appeal on March 11, 2015.

## **STATEMENT OF FACTS**

Several confidential informants provided information to state law enforcement of a dealer in narcotics in the Harford County, MD, area, identified as "Jamaican Charlie," due to his accent. This individual later was to be identified as Appellant. The investigation spurred by this information included extensive surveillance of Appellant and those he associated with over the course of a two months, pen register information linking some of these individuals via phone, a wiretap of cell phone numbers allegedly utilized by Appellant, and GPS monitoring, records checks, and narcotics purchases from Appellant by an undercover police officer.

At the point of Appellant's arrest at his residence on the state charges, the residence was searched and 932 grams of cocaine, 28 grams of crack, and $81,000 in cash was located, while an additional 700 grams of heroin was located in the vehicle operated by Appellant after a police K-9 alerted to it. At least six cell phones were seized from Appellant and searched by law enforcement without a warrant.

Additional facts will be adduced as necessary within the several arguments, *infra*.

5

# SUMMARY OF THE ARGUMENT

*Issue I*

The trial court erred in failing to suppress the evidence obtained from a electronic monitoring of cell phones for which no probable cause was demonstrated, or GPS monitoring of rental vehicles specified in neither the warrant nor the application. The application was facially deficient, and the warrant therefore was impermissibly overbroad.

*Issue II*

While the warrantless search of Appellant's cell phones by state law enforcement, pursuant to a state investigation, took place a year before the Supreme Court decision in *Riley v. California*, their undertaking of such a search absent a specific exception in state or federal constitutional law permitting this warrantless search ran the risk of suppression of any evidence seized thereby.

*Issue III.*

A criminal defendant has the absolute right to counsel in a criminal case, as guaranteed by the Sixth Amendment, *see Gideon v. Wainwright*, 372 U.S. 335 (1963), a right he only may waive under specific and limited circumstances. The trial court

conducted an inadequate inquiry regarding Appellant's professed desire to represent himself, so as to fulfill the absolute requirements for such a waiver of counsel in favor of self-representation, as required by *Faretta v. California,* 420 U.S. 806 (1975). While Appellant made statements which could be understood to exhibit a desire to represent himself, the trial court's failure to ensure that his statements actually were a reflection of this desire, as opposed to a request for the assistance of competent counsel, and then concomitantly failing to ensure that Appellant actually comprehended what self-representation involved, rendered this a constitutionally infirm waiver of this vital constitutional right.

# ARGUMENT

**I.  THE TRIAL COURT ERRED IN ADMITTING EVIDENCE FROM THE WIRETAP OF MULTIPLE PHONES, AND THE GPS MONITORING OF MULTIPLE VEHICLES, WHEN THERE DID NOT EXIST PROBABLE CAUSE TO BELIEVE THESE INSTRUMENTALITIES WERE BEING UTILIZED IN A NARCOTICS DISTRIBUTION ENTERPRISE, AND THE APPLICATIONS FOR SUCH MONITORING WERE FACIALLY INSUFFICIENT.**

## Standard of Review

The trial court 's finding of probable cause relative to a wiretap application is reviewed *de novo*.  *Ornelas, v. United States,* 517 U.S. 690, 691-99 (1996).

## Argument

A major portion of the evidence in this case derived from electronic surveillance, whether the wiretaps or the GPS monitoring of Appellant's travels in various rental cars.  The applications for the wiretaps and GPS monitoring were lacking in particulars relative to the taps on the specific phones (nine in number), or the particular rental cars Appellant ultimately was seen to use.  As such, these far too broad applications constituted general warrants, which are disfavored by the Fourth Amendment, and the findings of probable cause by the district court cannot survive scrutiny.  All evidence seized thereby should have been suppressed.

It is plain from the several applications that this was not, and not alleged to be, a large complex narcotics trafficking organization, requiring a lengthy or involved investigation.   Rather it was a single person acting as a narcotics distributor in Harford County, and this single person apparently with a single source for narcotics. The actual customers of Appellant, as opposed to informants sent to initiate contact with him, were few in number and limited in scope.

In light of the limited nature of the drug dealing enterprise operated by Appellant, as their investigation was able to discern, law enforcement had no basis to suggest that each and every vehicle and phone utilized by Appellant likewise was being utilized by him in furtherance of his narcotics distribution enterprise.  Indeed, common practice would suggest different instrumentalities for different purposes. Apparently law enforcement, and the reviewing court, were not familiar with the concepts of the "business phone" and the "company car."  As a result, there was nothing less than a rush to judgment regarding what Appellant reasonably could be anticipated to be involved with, and this rush found it way into the conclusory allegations set forth in the applications for this electronic monitoring.

This problem was plain, and was plain on the face of the initial application for a pen register.  Dated May 2, 2013, the application claimed the following  – and no more:

9

>Applicant certifies that Harford County Sheriff's Office is conducting an ongoing criminal investigation regarding **Cocaine, Heroin and Marijuana Distribution** by **Lyndon Miller,** hereinafter referred to as **"Subject,"** who is using one or more unidentified wireless telephones; and that Subject is known to live at or frequents locations in Harford County.

(emphasis in original). JA 62. Only slightly greater specificity was to follow relative to cell phones, with only three numbers being identified as used by Appellant, JA 502-05, and two other possible numbers. JA 516.

While law enforcement did provide specifics for certain vehicles Appellant operated when it sought leave to install GPS monitors on them, *see* JA 107-147, it later sought authorization also for rental vehicles. JA 273. The rental vehicles for which authorization was sought were solely those specific ones known to law enforcement, citing to the specific rental companies which law enforcement believed (Avis) or had confirmed (Dollar) that Appellant had patronized , JA 282. Read fairly, the order limited the installation to two rental vehicles which law enforcement had applied.

   a. Attach an electronic tracking device to the exterior of the aforementioned [rental] vehicles, utilized by MILLER, which shall transmit and received radio signals for the purpose of tracking the movements of the vehicles.
   b. Monitor those radio signals and establish the movement and location of the aforementioned vehicles for a period of sixty (60) days.
   c. Enter private property and the aforementioned vehicles without knocking or giving warning for the limited purpose of

10

> installing, maintaining, repairing, replacing or removing the electronic tracking device.
>
> d.    Seize, if need necessitates, and move the aforementioned vehicles to a secure location for the installation/maintenance or removal of the electronic tracking device.

JA 285.  As laid out in comprehensive fashion by defense counsel, JA 271-73, there was no request made by law enforcement regarding other vehicles or companies, although, the various materials supplied in discovery repeatedly mentioned the surveillance of Appellant being "electronic" in nature, a plain reference to GPS monitoring.[1]   It cannot be questioned that law enforcement went far beyond the terms of the applications it submitted and the warrants it received.

Use of GPS monitoring constitutes a search, and requires advance authorization from a magistrate. *United States v. Jones*, 132 S.Ct. 945, 949 (2012). The application did not reference other or unknown vehicles, rather it stated that Appellant had rented a vehicle from each of two rental companies.  He was surveilled, electronically, using other vehicles, including perhaps those from other companies, JA 277-78.

---

[1]    Appellant notes that there is no mention of the use of a cell phone emulator device, popularly known as a "stingray," in the discovery materials, and he therefore can neither know of nor challenge such a use on the record below, and would have done so were such apparent.

11

The application therefore lacks specificity, and cannot sustain a search of those other vehicles, which is to say vehicles other than those for which law enforcement had applied. The language is plain, in both the application and the order, referencing the "aforementioned" vehicles. There is no suggestion or request for prospective rentals, or for the prospective bootstrapping of the application to other vehicles or companies then unknown. This renders the order facially insufficient to justify a search of such prospective instrumentalities, for it is settled law that a warrant to search requires "particularity" with regard to the places or thing sought to be searched or seized. *Andresen v. Maryland,* 427 U.S. 463, 480 (1976); *Stanford v. Texas,* 379 U.S. 476, 481-85 (1965).

What is not sanctioned is "the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927); *see also Groh v. Ramirez,* 540 U.S. 551, 557-63 (2004) (warrant invalid where it contained no description of items to be seized). This extends as well to the failure of the warrant to attach or incorporate by reference the application, which in turn contained a sufficient, particular description of the items to be seized. *Groh v. Ramirez,* 540 U.S. at 557-63; *United States v. Hurwitz*, 459 F.3d 463, 470-73 (4th Cir. 2004) (either attachment or incorporation by reference will suffice). Even assuming the use of the word "aforementioned" in the order was a sufficient reference to satisfy the *Groh*

12

standard, those vehicles which were aforementioned were a single one from each of Avis and Dollar, and not the series of vehicles, tracked "electronically," which defense counsel abstracted from the discovery materials and laid before the district court. JA 277-78.

Similarly, it cannot be drawn from an application for the monitoring of three phones utilized in narcotics transactions that somehow, miraculously, other phones may be so monitored as well.

Law enforcement, to use the old saw, asked for an inch and took a mile. Its conduct cannot be legitimized under any theory of search and seizure law, and the electronic monitoring of phones and GPS devices, and all evidence obtained thereby, should have been excluded from evidence.

## II.     THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE EVIDENCE SEIZED THROUGH THE WARRANTLESS SEARCH OF APPELLANT'S CELL PHONES BY STATE LAW ENFORCEMENT, IN CONTRAVENTON OF *RILEY V. CALIFORNIA.*

### Standard of Review

The trial court 's determination of a question of constitutional law is reviewed by this Court *de novo*. *United States v. Lopez,* 219 F.3d 343, 346 (4th Cir. 2000).

**<u>Argument</u>**

Appellant adopts, as if fully set forth herein, the factual description set forth in Argument I, *supra*.

"[A]t Least" six cell phones were seized from Appellant at the point of his arrest in June, 2013.  JA 317.  Notwithstanding its claimed view of Appellant's involvement in narcotics trafficking, and the information developed during the wiretap, the state law enforcement officers involved did not undertake to obtain warrants for the search of the several phones then seized from Appellant.  Law enforcement search of these phones therefore ran afoul of the Supreme Court's decision in *Riley v. California,* —U.S. —, 134 S.Ct. 2473 (2014), which issued only on June 25, 2014, which is to say after the filing of the defense motions in this matter.

In *Riley,* the Supreme Court distilled to a certainty that the Fourth Amendment requirement for a warrant, with the strictly set exception of but a specific and specifically delimited a subset of searches, extended as well to the search of cell phones.

> As the text makes clear, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Brigham City v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). Our cases have determined that "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, ... reasonableness generally requires the obtaining of a judicial warrant."

14

> *Vernonia School Dist. 47J v. Acton,* 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Such a warrant ensures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. See *Kentucky v. King,* 563 U.S. ——, ——, 131 S.Ct. 1849, 1856–1857, 179 L.Ed.2d 865 (2011).

*Riley*, —U.S. —, 134 S.Ct. at 2482.

With this principle considered, the privacy interests of a cell phone owner and user then must be balanced against governmental interests, to assess whether the search of a cell phone can or should be permitted absent a warrant.  *Id.* at 2484; *Wyoming v. Houghton,* 526 U.S. 295, 300 (1999).  This is the analysis which permitted a exception to the warrant requirement in *United States v. Robinson,* 414 U.S. 218, 235-36 (1973), and acknowledging this precedent, the Supreme Court unequivocally determined that the limited exception which permitted the search in *Robinson* did not obtain, and declined to broaden the exception yet further to the data on cell phones.  134 S.Ct. at 2485 ("We therefore decline to extend ...").  The searches of the cell phones[2] were ruled illegal, and the evidence from them was suppressed.  *Id.* What is plain from *Riley*, and the government in its arguments

---

[2]  *Riley* was a joint opinion, involving as well a federal case from Massachusetts, *United States v. Wurie* .

below successfully elided, is that the default view for a warrantless search is to understand it as being illegal.

This core principle eluded the district court, which ruled, and incorrectly, that in undertaking the search the police could not have known that *Riley* would issue, and were authorized to rely upon "binding precedent" from this Court which permitted a search of a cell phone. The district court's view was as follows:

> At the time law enforcement activated defendant's cellphones, there was binding judicial precedent in the Fourth Circuit that permitted the warrantless search of the contents of a cell phone, incident to arrest. *See United States v. Murphy*, 552 F.3d 405, 411-12 (4th Cir. 2009) (holding officers may seize cellphones incident to arrest and retrieve text messages and other information without a search warrant); *see also United States v. Graves*, 545 Fed. App'x 230, 234 (4th Cir. 2013) (same). Until the Supreme Court's decision in *Riley*, *Murphy* remained good law in the Fourth Circuit. Thus, the government urges that the exclusionary rule is not appropriate here, because law enforcement agents were acting in accordance with what was understood at the time to have been the law .
>
> In my view, in June 2013, law enforcement agents were not required to anticipate the decision in *Riley*, decided in June 2014. Therefore, the exclusionary rule is inapt here. Because the warrantless inspection of Miller's cell phones upon his arrest preceded the *Riley* decision, I agree with the government that it is entitled to rely on the god faith exception to the exclusionary rule, discussed *supra*. *See Leon*, 468 U.S. at 923-24; *see also United States v. Stephens*, ____ F.3d ____, 2014 WL 4069336 (4th Cir. Aug. 19, 2014) (declining to apply the exclusionary rule with respect to the warrantless use of a GPS device on a vehicle prior to the decision in *United States v. Jones*, ____ U.S. ____, 132 S. Ct. 945, 949 (2012)).

16

JA 721.

Precedent from this Court was, however, not in any way "binding" upon state law enforcement acting in that capacity. Unaddressed by the district court was the plain fact that the law enforcement officers in question were solely state officers, and there was no **Maryland** or **Supreme Court** precedent – plainly binding – which would have absolved the officers of the default constitutional violation inherent in a warrantless search, a violation which the district court to its credit did not gainsay.

Not only did the Supreme Court in *Riley*, *id.*, recognize the overweening nature of this violation, it likewise made clear that none of its precedent spoke to this issue, and therefore there could have been no good faith "reliance" upon such a non-existent premise. The federal government now seeks, *ex post facto*, to rely upon federal precedent, which does not and did not apply in a the violation committed by state police agents acting in a state investigation, agents who were bound both by state law and Supreme Court precedent, but not by the precedent of this Court.

By stark contrast, the Supreme Court did address the mandatory requirement for a warrant in all but a strictly circumscribed and delimited subset of instances, making its view absolutely clear. The admonition of the Court bears repetition.

17

> In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. See *Kentucky v. King,* 563 U.S. ——, ——, 131 S.Ct. 1849, 1856–1857, 179 L.Ed.2d 865 (2011).

*Id.* at 2482.  What flowed from *Robinson* was a limited exception to this rule, which the Court "declined to extend."  The district court and the government cannot clear this plainly demarcated hurdle.

This only can be understood to mean that, in the absence of a warrant or specific exception set out in advance, thereby permitting reliance upon such, the police conduct a warrantless search at peril of suppression, for in the absence of a warrant such a search all they can "rely" upon is the default setting –  that such a search is plainly illegal in advance of its being undertaken.  The absence of a warrant speaks to the illegality of the proposed course of conduct by the police, and therefore there can be no good faith reliance by the police upon the legality of their conduct.  The extended attempt undertaken by the district court aimed at the absolution of the police misconduct, JA 722-24, does not speak to this, because it cannot.  State police officers cannot rely in good-faith on federal law to legitimize a search by state police, undertaken in a state court investigation, with warrants signed by state magistrates in reliance upon representations made by affiants who all were state law enforcement officers acting as such, and indeed there is no precedent suggesting this.  Appellant only was charged federally after he was

18

arrested by the state authorities, and there was no reference to a joint investigation or the federal deputizing of these officers. The criminal complaint authored by a federal law enforcement agent, DEA SA Paul Neikirk, makes this amply clear.

> Since November, 2011, the Harford County Task Force has received information regarding a subject named "Charlie" selling significant quantities of cocaine, marijuana and heroin ... in Harford and surrounding counties of Maryland.

JA 23. There is no mention of a federal component to or participation in this investigation, and this language is common to the state court documents which preceded this complaint. *See, e.g.,* JA 281. There is no question that the federal dimension is solely the prosecution of Appellant, and no more.

The search of the cell phones should have been declared illegal, and the results thereof should have been suppressed. In the absence thereof, reversal is mandated.

III.  **THE TRIAL COURT FAILED TO ENSURE THAT APPELLANT ACTUALLY COMPREHENDED HIS RIGHT TO COUNSEL IN AN ADEQUATE FASHION SO AS TO ENTER A CONSTITUTIONALLY EFFECTIVE WAIVER OF THIS RIGHT, AND IN SO DOING FAILED TO MEET THE REQUIREMENTS OF *FARETTA*.**

**Standard of Review**

The district court's determination of a defendant's pretrial motion to proceed *pro se* is reviewed *de novo*. *See United States v. Singleton,* 107 F.3d 1091, 1097 n.3 (4th Cir. 1997). This Court reviews a district court's findings of fact, and its assessment of a defendant's in-court conduct, for clear error. *See United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2003); *Singleton, id.*

**Argument**

Initially, it must be understood that Appellant did request to represent himself, but did so only after he had become dissatisfied with counsel he had hired, and that counsel had been hired after he had become dissatisfied with two different appointed counsel. This, taken together with some degree of language difficulty, as well as the apparent need for a mental health evaluation of Appellant, should have cautioned the district court to tread carefully when Appellant eventually enunciated a desire to represent himself, and did so less than three weeks before trial.

20

Appellant does not assert to any degree that the district court took it upon itself to deny him his Sixth Amendment rights, *sua sponte*. Nonetheless, the district court should have undertaken a much more careful and in depth analysis of this request by Appellant, so as to ensure that there was no *de facto* denial of his constitutional rights, in light of Appellant's lack of education, training and experience in the law. Even absent any intentional component, the actions of the district court had the same effect, to deny Appellant his constitutionally protected right to counsel in a criminal matter, per *Gideon v. Wainwright*, 372 U.S. 335 (1963), by failing to ensure that Appellant had undertaken a knowing and voluntary waiver of his right to counsel in favor of self-representation.

Appellant had been appointed counsel, first the FPD, and then CJA counsel when he dismissed the FPD. JA 5-6; ECF 17, 35-36. He then hired private counsel, JA 9, ECF 81, who handled the motions hearings on July 28 and October 3. Subsequent to the July 28 hearing there were problems with the attorney client relationship, and private counsel had moved to withdraw. JA 13, ECF 123. A hearing on counsel before a magistrate judge was held immediately prior to the October 3 hearing, and private counsel continued to represent Appellant. JA 13, ECF 128. This process was repeated before the October 30 hearing, and counsel was relieved as a result of that hearing. JA 15, ECF 147-50.

21

It is this October 30 relief of counsel, in favor of Appellant's request to represent himself *pro se*, which is most problematic. In light of the prior proceedings, and the relief of two prior counsel, it was incumbent upon the district court to conduct a careful analysis of Appellant's readiness to represent himself. This was not done, and the absence of this served to deny Appellant his constitutionally-guaranteed right to counsel.

The district court did inquire regarding the breakdown of the attorney-client relationship, and confirmed that Appellant would not meet with counsel who then were entered on his behalf. JA 905. Appellant did request another attorney to act as stand-by counsel, and in response the district court did address the "Constitutional right of a person who is considered qualified to do so to represent himself." JA 905-06, *see also* 908. The district court and government counsel addressed the need for a *Faretta* hearing. JA 908-09. Standby counsel did meet with Appellant, and when the court reconvened the district court made its record. The court noted that a mental competency evaluation had been passed by Appellant, and pertinent portions of the resulting report were read into the record, JA 908-11.

Government counsel, to his credit, then addressed the salient consideration before the court at that point.

> MR. ROMANO:  I think the next thing we need to do is -- and the
> Court's been made aware that he's been found
> competent -- is to satisfy ourselves that he is
> ***capable of proceeding*** to represent –

JA 853 (emphasis supplied).

Be that as it may on the part of government counsel, this was not within his control.  In response, however, no **detailed** examination was undertaken by the district court of Appellant  -- an individual who was known to have a mental health issue sufficient to have had an evaluation ordered – in order to determine if his "waiver" was knowing and indeed voluntary, as opposed to it being a choice thrust upon him in lieu of the less than competent and inadequate conduct of his counsel, which he had addressed to the court's attention.  The failure of such an inquiry taints the entirety of the subsequent proceedings.

Beyond the right to counsel guaranteed to a criminal defendant under the Sixth Amendment, *see Gideon, supra*, the amendment also protects a defendant's right to waive representation by counsel and to represent himself,  as long as the waiver is knowing, intelligent and voluntary. *Faretta v. California,* 422 U.S. 806, 835 (1975).  Acknowledging that in representing himself a defendant "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right

23

to counsel," the Supreme Court has determined that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id.*, *quoting Johnson v. Zerbst,* 304 U.S. 458, 464-65 (1938).  The defendant "should be made aware of dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.*, *quoting Adams v. United States ex rel. McCann ,* 317 U.S. 269, 279 (1942).

The inquiry required to vindicate any potential waiver of this right cannot be merely *pro forma*, as the Supreme Court has acknowledged in other contexts.

> Thus, we require a more searching or formal inquiry before permitting an accused to waive his right to counsel at trial than we require for a Sixth Amendment waiver during postindictment questioning—*not* because postindictment questioning is "less important" than a trial (the analysis that petitioner's "hierarchical" approach would suggest)—but because the full "dangers and disadvantages of self-representation," *Faretta, supra,* 422 U.S. at 835, 95 S.Ct., at 2541, during questioning are less substantial and more obvious to an accused than they are at trial. Because the role of counsel at questioning is relatively simple and limited, we see no problem in having a waiver procedure at that stage which is likewise simple and limited. So long as the accused is made aware of the "dangers and disadvantages of self-representation" during postindictment questioning, by use of the *Miranda* warnings, his waiver of his Sixth Amendment right to counsel at such questioning is "knowing and intelligent."

*Patterson v. Illinois,* 487 U.S. 285, 299-300 (1988). The obvious corollary to this is that there are instances when the role of counsel is of such crucial importance that the inquiry must be searching and detailed, and the failure to do this necessarily will taint the proceedings. To achieve this, it has been suggested that the inquiry should track that set out in an earlier version of the BENCHBOOK FOR U.S. DISTRICT COURT JUDGES, § 1.02. *McDowell v. United States,* 814 F.2d 245, 250-51 (6th Cir.), *cert. denied,* 484 U.S. 980 (1987). The 2013 edition of the BENCHBOOK sets out no fewer than **fourteen** matters into which the district court should inquire in this context. § 1.02-C.

1.  *Whether the defendant has studied law.* This was not addressed.

2.  *Whether the defendant has even represented himself in a criminal matter.* This was not addressed.

3.  *Whether the defendant understands that he is charged with the specific crimes set out in the indictment.* Addressed by government counsel, JA 857-62.

4.  *Whether the defendant understands the potential penalties for each crime charged.* Addressed by government counsel, JA 857-62.

5.  *Whether the defendant understands the separate penalties for the each crime can be imposed consecutively if he is found guilty of them.* Addressed by government counsel, JA 857-62.

6.    *Whether the defendant understands that the advisory Sentencing Guidelines that may have an effect on the sentence.*  Addressed only tangentially.

7.    *Whether the defendant understands that if he chooses to represent himself, the court cannot assist or advise him on how to try the case.*  Addressed only tangentially.

8.    *Whether the defendant is familiar with the Federal Rules of Evidence*

9.    *Whether the defendant understands that the rules of evidence govern what evidence may or may not be introduced at trial, and that in representing himself he must abide by those very technical rules, which will not be relaxed for his benefit*

10.   *Whether the defendant is familiar with the Federal Rules of Criminal Procedure*

11.   *Whether the defendant understands that the rules of procedure govern the way a criminal action is tried in federal court, and that in representing himself he must abide by those very technical rules, which will not be relaxed for his benefit.*  Items 8 through 11 concerning the applicable Rules were not addressed with any particularity, though the issue of "evidence" was mentioned.

12.   *Whether the defendant understands that in the opinion of the court a trained lawyer would defend a person far better than he could defend himself, and that it therefore is unwise of him to try to represent himself, since he is unfamiliar with the law, the rules of procedure and the rules of evidence.* Addressed by the court, JA 805-06.

13.   *Whether the defendant, in light of the penalties that he might suffer if he is found guilty, and in light of all of the*

26

> *difficulties of representing himself, still desires to represent himself and to give up his right to be represented by a lawyer.* This was made clear by the lengthy colloquy between the court and Appellant, JA 833, *passim*

> 14. *Whether the defendant's decision entirely voluntary.* This was made clear by the lengthy colloquy between the court and Appellant, JA 833, *passim*

In whatever manner this is accomplished, the trial court must be very careful to protect the defendant's mutually exclusive rights in undertaking to advise him, and then to accept his waiver.

> A trial court evaluating a defendant's request to represent himself must "traverse ... a thin line" between improperly allowing the defendant to proceed *pro se,* thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation.

*Fields v. Murray,* 49 F.3d 1024, 1029 (4th Cir.1995) (en banc).

When the assertion is unclear, or the defendant vacillates, this Court has held that the trial court is justified in ordering that a defendant must proceed with appointed counsel. *United States v. Frazier-El,* 204 F.3d 553, 559 (6th Cir.), *cert. denied,* 484 U.S. 980 (1987). This is because "the right to counsel is preeminent and hence, the default position," *United States v. Singleton,* 107 F.3d 1091, 1096 (4th Cir. 1997), which not least because with the greater availability of competent counsel, the historical recognition and support for this right "does not have the same

27

force." *Martinez v. Court of Appeal of Calif.*, 528 U.S. 152, 158 (2000). This is no less the case when the defendant arguably can be said to be incapable of carrying forward a defense because it has not yet been determined that he actually is capable of doing so.

This Court has set out a three-prong test to determine whether a defendant's request to proceed *pro se* was properly granted. *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). The first requirement is that the defendant's assertion of the right must be "clear and unequivocal." *Id.* In the proceedings below, every assertion of a right to represent himself made by Appellant was irremediably tainted by his dissatisfaction with private counsel, who engaged in "this type of criminal activity," JA 856, to the point where he plainly had all but despaired of the services of any attorney. The record is not clear as to what Appellant meant by this, and the failure to ascertain this meant that the district court could not be certain that this merely stemmed from a misunderstanding on the part of Appellant as to the proper role of counsel.

This is not the situation which informed the denial of self-representation in *United States v. Bush*, 404 F.3d 263, 270-72 (4th Cir. 2005), where the defendant moved to dismiss his second appointed attorney and wanted a third one appointed a week before trial. The trial court in that case found that the request was made for

28

purposes of manipulation, and this Court found no clear error in the conclusion that the request was an effort to delay and manipulate the trial proceedings. No such finding was suggested below.

The requirement that the defendant's demand for self-representation be "clear and unequivocal" arises from recognition of the fact that self-representation is at odds with a defendant's right to counsel. *Bush,* 404 F.3d at 270-71. The rule insures that a defendant does not waive his right to counsel lightly or by "occasional musings" and also serves to prevent a defendant from engaging in manipulation or taking advantage of the tension between the right of self-representation and the right to counsel. *Id.* at 271. This principle also recognizes that when there is a lack of clarity in the assertion by the defendant, the court should err on the side of preservation of the right to counsel. "In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation." *Frazier-El,* 204 F.3d at 559, *quoting Singleton*, 107 F.3d at 1102. This primacy was barely recognized below.

Indeed, the government's interest in ensuring the "integrity and efficiency of the trial" at times outweighs the defendant's interest in acting as his own lawyer.

*Frazier-El,* 204 F.3d at 560, *quoting Martinez,* 528 U.S. at 162.  Therefore, in that a defendant's right to represent himself is not absolute, *Faretta,* 422 U.S. at 835, a court must conduct an adequately searching inquiry before permitting this. Appellant, commencing with his initial expression of a desire to represent himself, at the least raised the spectre that this was a decision forced upon him by his inadequate attorneys.  JA 854-56.  When the trial court likewise recognized these inadequacies, its failure to probe Appellant's motivations and this plainly-expressed precondition was all the more inexplicable.

The second requirement noted by this Court in *Frazier-El* is that the waiver of the right to counsel must be made knowing, intelligent and voluntary. 204 F.3d at 558.  In that, as discussed, *supra,* the Supreme Court has emphasized that when a defendant seeks to waive his right to counsel at trial, the court must engage in a "more searching or formal inquiry" than when waiver of counsel is requested at another stage of a prosecution, *see Patterson v. Illinois*, 487 U.S. at 299, the almost complete lack of detailed inquiry below makes clear that this requirement was not paid even lip service.  The Supreme Court is clear on its requirements for such a waiver.  "[W]e have imposed the most rigorous restrictions on the information that must be conveyed to a defendant, and the procedures that must be observed, before permitting him to waive his right to counsel at trial."  *Id*. at 298, *citing Faretta*, at

835-36.  This is because of overarching consideration involved, that of the court's recognition of  "the enormous importance and role that an attorney plays at a criminal trial."  *Id.*  Compared with self-representation at any other stage, the full "dangers and disadvantages of self-representation" at trial are less obvious and more substantial.  *Id.* at 299.

The final consideration is whether the assertion to the right to self-representation has been timely.  Here, the district court's ruling to permit Appellant to proceed with standby counsel was made on the same day as a continued motions hearing, October 30.  The motions hearing, a component of trial, *cf. Patterson,* 487 U.S. at 299-300 (paramount importance of counsel for trial), proceeded without a waiver of Appellant's right to counsel, for the contemporaneous inquiry was inadequate on its face.

Appellant, a person of questioned mental health issues, was, at bottom, denied his constitutional right to counsel by the district court's failure to conduct a careful analysis of his claim that he wanted to represent himself, which assertion by Appellant only followed the inadequate handling of his defense by retained counsel.  The court then failed to conduct an inquiry adequate to ensure that the waiver was indeed knowing and voluntary.  Far from a proactive insertion of itself into this "decision" by Appellant, as required when such an important right is

31

implicated, the district court failed to fulfill its constitutionally-mandated obligation to the trial process by failing to protect Appellant's right to counsel, and too quickly fastened upon the appointment of standby counsel as a prophylactic measure. This was plainly inadequate.

Appellant's conviction therefore should be vacated, and this matter returned to the district court for a new trial, preceded by a full, formal and complete inquiry regarding self-representation conducted pursuant to and in fulfilment of the requirements set out in *Faretta* and elaborated upon in the BENCHBOOK

## **CONCLUSION**

For the foregoing reasons, Appellant Lyndon respectfully requests this Court to reverse the judgment of the United States District Court for the District of Maryland, and to remand his cause with an order for a new trial on the merits, and to tax the costs of these proceedings to Appellee.

September 29, 2015                    Respectfully submitted,


                                      _____

                                      MICHAEL D. MONTEMARANO

                                      Michael D. Montemarano, P.A.
                                      10630 Little Patuxent Parkway
                                      Suite 146
                                      Columbia, MD 2144
                                      (410) 992-0067/992-6915
                                      montemarano67@gmail.com

                                      Counsel for Appellant/CJA Counsel

33

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements.


<u>1.</u>  This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

The word count of this brief is 6,572  words.

<u>2.</u>  This brief complies with the typeface requirements of Fed. R. App.P32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

This brief has been prepared in a proportionally spaced typeface using:

Microsoft Word, Times New Roman, 14 point.

September 29, 2015

## **CERTIFICATE OF SERVICE**

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this 29th day of September, 2015, filed the required copies of the foregoing Joint Brief of Appellants and Joint Appendix in the Office of the Clerk of the Court, and filed same via the CM/ECF system, serving them thereby on Christopher Romano, Esq., Assistant United States Attorney, 36 South Charles Street, 4th Floor, Baltimore, MD 21201, Counsel for Appellee.

_____
MICHAEL D. MONTEMARANO